IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JANINE FALARDO-WELLER,** | : | CIVIL ACTION NO. 1:18-CV-1719 |
| | : | |
| Plaintiff | : | (Chief Judge Conner) |
| | : | |
| v. | : | |
| | : | |
| **ANDREW M. SAUL,** | : | |
| **Commissioner of Social Security,** | : | |
| | : | |
| Defendant | : | |

## MEMORANDUM

Plaintiff Janine Falardo-Weller appeals the decision of the Commissioner of Social Security denying her application for disability insurance benefits. Before the court are Falardo-Weller's complaint and the parties' respective briefs; the report of Chief Magistrate Judge Susan E. Schwab recommending that we deny the appeal; Falardo-Weller's objections to the report; and the Commissioner's response to the objections. For the reasons that follow, we will grant Falardo-Weller's appeal and vacate the Commissioner's decision.

**I.   Background**

Falardo-Weller filed an application for disability insurance benefits under Title II of the Social Security Act on June 3, 2015. (Tr. at 144-45). Her application was initially denied, and Falardo-Weller thereafter requested a hearing before an administrative law judge ("ALJ"). (Id. at 72-76, 77). On August 9, 2017, Falardo-Weller and a vocational expert appeared at a hearing and testified before the ALJ. (Id. at 35-52). The ALJ issued a written decision on November 22, 2017, concluding that Falardo-Weller is not disabled. (Id. at 14-26). Falardo-Weller requested review

before the Appeals Council, which denied her request on July 9, 2018. (Id. at 1-4). The ALJ's decision thus stands as the "final decision" of the Commissioner for purposes of judicial review. See 42 U.S.C. § 405(g); 20 C.F.R. § 404.981; (see also Tr. at 1).

Falardo-Weller commenced this action on August 29, 2018, seeking review under Section 405(g) of the Commissioner's decision. The parties briefed the issues on appeal before Chief Magistrate Judge Susan E. Schwab, who issued a report on March 19, 2020, recommending that we deny Falardo-Weller's appeal and affirm the Commissioner's decision. Falardo-Weller timely objected to the report, and the Commissioner field a response thereto. This appeal is accordingly ripe for disposition.

## II.  Legal Standard

### A.  Review of a Magistrate Judge's Report and Recommendation

When a party objects to a magistrate judge's report and recommendation, the district court undertakes *de novo* review of the contested portions of the report. See E.E.O.C. v. City of Long Branch, 866 F.3d 93, 99 (3d Cir. 2017) (quoting 28 U.S.C. § 636(b)(1)); see also FED. R. CIV. P. 72(b)(3). We afford "reasoned consideration" to any uncontested portions of the report before adopting them as the decision of the court. City of Long Branch, 866 F.3d at 100 (quoting Henderson v. Carlson, 812 F.2d 874, 878 (3d Cir. 1987)).

### B. Substantial Evidence Standard of Review

District courts have jurisdiction to review decisions of the Commissioner denying disability insurance benefits based upon 42 U.S.C. § 405(g). See 42 U.S.C. § 405(g). Judicial review of legal issues decided by the Commissioner is plenary. Hess v. Comm'r Soc. Sec., 931 F.3d 198, 208 n.10 (3d Cir. 2019) (quoting Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 359 (3d Cir. 2011)). Review of factual findings is highly deferential: a court asks only whether the factual findings are supported by "substantial evidence." 42 U.S.C. § 405(g); Hess, 931 F.3d at 208 n.10 (quoting Chandler, 667 F.3d at 359). This threshold "is not high" and requires only that the agency finding be supported by "more than a mere scintilla" of evidence. Biestek v. Berryhill, 587 U.S. ___, 139 S. Ct. 1148, 1154 (2019) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. (quoting Consol. Edison, 305 U.S. at 229).

### C. Sequential Evaluation Process

An ALJ must follow a five-step sequential process to determine whether a claimant is disabled. Hess, 931 F.3d at 201 (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). At step one, the ALJ examines the claimant's work history and asks whether the claimant is performing "substantial gainful activity." If yes, the claimant is not disabled; if no, the ALJ moves to step two to consider whether the claimant has a "severe medically determinable physical or mental impairment" as defined by the applicable regulations. See 20 C.F.R. §§ 404.1520(a)(4)(i)-(ii),

416.920(a)(4)(i)-(ii).  A lack of such an impairment requires a finding that the claimant is not disabled.  Id.

If the claimant has one or more severe medically determinable impairments, the ALJ proceeds to step three and decides whether any of those impairments, or a combination thereof, meets or equals one of the Commissioner's listed impairments, or "Listings."  Id. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  A claimant is considered disabled if he or she meets or equals a Listing.  Id.  If the claimant does not, the ALJ proceeds to step four to assess the claimant's "residual functional capacity"[1] and determine whether the claimant is able to perform their past relevant work.  Id. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  A "yes" at step four forecloses a disability finding; a "no" requires the ALJ to proceed to step five, where the ALJ considers whether the claimant can do any other work given their RFC, age, education, and work experience.  Id. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If the claimant can do other work, the claimant is not disabled.  Id.  But if not, the ALJ must find the claimant disabled.  Id.

**III.   Discussion**

We begin by briefly summarizing the ALJ's pertinent findings.  The ALJ found at step one that Falardo-Weller is not engaged in substantial gainful activity and found at step two that Falardo-Weller suffers from a bevy of severe impairments: history of syncope, mitral valve prolapse, hypothyroidism with

---

[1] A claimant's residual functional capacity, or "RFC," is "the most [a claimant] can still do despite [their] limitations."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

4

thyroidectomy, history of seizures, symptom of positional orthostatic tachycardia syndrome (or POTS), cervical radiculopathy, gastroesophageal reflux disease (or GERD), Grave's disease, history of migraines, and adjustment disorder. (Id. at 19). At step three, the ALJ found that no impairment or combination of impairments meets or equals a Listing. (Id. at 20). At step four, the ALJ opined that Falardo-Weller has the RFC "to perform medium work . . . except no detailed instructions, no hazardous machinery, no unprotected heights and no climbing ladders or scaffolds." (Id. at 21). And at step five, the ALJ concluded that Falardo-Weller can perform her past relevant work as a deli clerk and accordingly is not disabled. (Id. at 24).

Falardo-Weller raises two related arguments on appeal: *first*, she contends that the ALJ erred in rejecting much of her testimony concerning the severity and frequency of her symptoms, and *second*, she asserts that the ALJ erred by failing to consider all medical evidence and provide clear reasons for discounting any evidence that the ALJ rejected. In her report, Judge Schwab opines that the ALJ's decision on both accounts is supported by substantial evidence. (Doc. 16 at 13-18). Because we agree with Falardo-Weller that the ALJ's rejection of her testimony concerning the intensity, persistence, and limiting effects of her symptoms is not supported by substantial evidence, we address only this issue.

Falardo-Weller suffers from a constellation of serious physical and neurological impairments. Her argument on appeal focuses on the ALJ's assessment of her symptoms arising from two of those conditions, *viz.*, seizures

5

and migraines.  (See Doc. 13 at 8-10; Doc. 17 at 7-11).  Falardo-Weller contends that the ALJ's reasons for rejecting her subjective description of seizure- and migraine-related symptoms are not supported by substantial evidence.  (Doc. 13 at 8-10; Doc. 17 at 7-11).  We agree.

The framework for evaluating a claimant's reported symptoms is set forth in 20 C.F.R. § 404.1529 and Social Security Ruling 16-3p.  See 20 C.F.R. § 404.1529; SSR 16-3p.  The ALJ must carefully consider the claimant's statements as to her symptoms but "is not required to credit them." Chandler, 667 F.3d at 363.  When evaluating a claimant's symptoms, the ALJ must follow a two-step process.  See 20 C.F.R. § 404.1529; SSR 16-3p.  The ALJ must first ask whether the claimant has a medically determinable impairment that "could reasonably be expected to produce [the claimant's] alleged symptoms."  20 C.F.R. § 404.1529(b).  If so, the ALJ must evaluate the "intensity and persistence" of those symptoms to determine how, if at all, they limit the claimant's capacity for work.  Id. § 404.1529(c).  In evaluating the intensity and persistence of a claimant's alleged symptoms, the ALJ is required to "consider all of the available evidence, including . . . medical history, the medical signs and laboratory findings, and statements about how . . . symptoms affect" the claimant.  Id. § 404.1529(a).

The ALJ concluded that Falardo-Weller's medically determinable impairments "could reasonably be expected to cause the alleged symptoms" but that her statements about the "intensity, persistence[,] and limiting effects of" those symptoms were inconsistent with and unsupported by the medical evidence.  (See

6

Tr. at 22). The ALJ found, as to Falardo-Weller's seizure disorder and her long history of migraines, that the medical records "do not support the frequency or the severity" of symptoms alleged by Falardo-Weller. (Id. at 24). With respect to both conditions, the ALJ also relied on a lack of objective test results substantiating the diagnoses and claimed symptoms. (Id.) Based on this conclusory assessment, the ALJ largely rejected Falardo-Weller's testimony about her symptoms.

Our review reveals that it is the ALJ's analysis, not Falardo-Weller's testimony, that is rife with inconsistencies and lacking record support. First, in addressing the conditions that Falardo-Weller claims to be most disabling—her migraines and seizure disorder—the ALJ stated that "objective testing of the brain and EEG show *no abnormalities*." (Id. at 24 (emphasis added)). This perplexing statement comes just one page after the ALJ acknowledged that an MRI of Falardo-Weller's brain on June 29, 2016, did in fact "show[] . . . vascular abnormalities suggestive of migraine headaches." (Id. at 23). Consequently, to the extent the ALJ relied on a purported lack of abnormal test results to conclude that Falardo-Weller's migraine condition caused only "mild" limitations, we cannot say that the ALJ's conclusion is supported by substantial evidence.

The ALJ also opines, in cursory fashion, that treatment notes "do not support" Falardo-Weller's description of the frequency and severity of her seizures and migraines. (Id. at 24). Falardo-Weller testified that she experiences migraine episodes eight to ten times per month; that the migraines cause loss of appetite, severe nausea, blurred vision, and blackouts; and that the migraine episodes can

7

last anywhere from two days to a week.  (Id. at 42).  Falardo-Weller also testified that she experiences grand mal and petit mal seizures four to five times per week which are accompanied by memory loss.  (Id. at 41).  She explained that, during these episodes, she falls to the floor and begins shaking, cannot speak, and does not know where she is.  (Id.)  Falardo-Weller testified, and medical records support, that her driver's license has been suspended due to these seizures.  (See id. at 47, 739).

The medical evidence cited by the ALJ supports rather than undermines this testimony.  In describing Falardo-Weller's migraine history, the ALJ cites to a treatment note from a neurology appointment on August 31, 2016, which documents Falardo-Weller's complaint of migraines that "consist of 2x/week episodes of severe pain with associated photophobia" and notes that Falardo-Weller "lays in the dark and tries to sleep it off for an hour and then is better" and claims to have "passed out because of how bad they got in the past."  (Id. at 735).  And in evaluating Falardo-Weller's history of seizures, the ALJ relies on a March 22, 2017 treatment note which confirms that Falardo-Weller "continues with grand mal seizures 1-2 times/week for 5-10 minutes and have been worsening in frequency."  (Id. at 1210).  That same note explains that Falardo-Weller also experiences "absence seizures" three times weekly.  (Id.)

The ALJ's finding that Falardo-Weller's testimony is inconsistent with and unsupported by the medical record appears to stem from the ALJ's own errors. Specifically, the ALJ erred in summarizing Falardo-Weller's testimony, suggesting that she claims to have "8-10 migraines *a week*."  (Tr. at 20, 22 (emphasis added)).

8

Medical records stating that Falardo-Weller experienced migraines only twice per week would indeed be inconsistent with that version of Falardo-Weller's testimony. But the ALJ misquoted the relevant portion of the transcript. What Falardo-Weller actually said was that she suffers eight to ten migraines *per month*. (See id. at 42 ("I have [migraines] at least eight to ten times a month."); id. (confirming that between October 2015 and January 2017, she documented "anywhere from eight, nine or ten migraines per month")). Thus, as to the frequency and severity of her migraines, the medical records relied on by the ALJ are consistent with Falardo-Weller's subjective complaints.

A similar error calls into question the ALJ's finding as to the frequency and severity of Falardo-Weller's seizures. This time, the ALJ misread the medical record. The ALJ cites a March 22, 2017 treatment note as the source for his statement that Falardo-Weller "had seizures in childhood and then started again in 2015 with worsening in 2017 *to once or twice a month*." (Id. at 23 (emphasis added)). The ALJ then adds that Falardo-Weller's "seizures previously had been absence seizures occurring three times a week, but now lasted 5-10 minutes occurring once or twice a week," suggesting that the frequency of absence seizures had decreased. (See id.) Were this what the treatment note said, we would agree with the ALJ that it is inconsistent with Falardo-Weller's testimony that she suffers multiple grand and petit mal seizures each week. However, the note actually states:

> [Falardo-Weller] had seizures as a child and then they started again in 2015. . . . She continues with grand mal seizures *1-2 times/week* for 5-10 minutes and have been

9

> worsening in frequency. She was previously only having absence seizures which continue about 3 times/week.

(Id. at 1210 (emphasis added)). The medical evidence relied on by the ALJ again corroborates rather than discredits Falardo-Weller's subjective testimony.

For her part, Falardo-Weller has identified medical evidence beyond the limited records cited by the ALJ which further support her subjective complaints of severe and worsening migraines. An October 2016 hospital discharge summary, for example, states that Falardo-Weller described her migraine pain as "[vice]-like across her forehead, . . . radiat[ing] to the neck and into the shoulders and back" and causing nausea. (Id. at 726). Falardo-Weller rated the pain as "severe" and an "8/10." (Id.) A November 2016 treatment note documents her complaint of "throbbing" migraines "associated with photophobia and phonophobia, nausea," lasting "1-2 hours," and accompanied by "episodes of blacking out . . . with loss of consciousness, lasting for one minute, with postictally confusion." (Id. at 754).

As for seizure activity, Falardo-Well cites an August 2016 treatment note indicating that she reported complaints of absence seizures occurring once or twice weekly and lasting for 15 to 20 minutes each, (see id. at 735), and the October 2016 hospital discharge summary which outlines her complaints of four different types of seizures or spells of varying frequency and severity, (see id. at 726). Falardo-Weller also cites a May 2017 neurology treatment note which offers perhaps the most detailed discussion of her seizure condition:

> Complex partial seizure v. Nonepileptic seizure: She will usually get a warning consisting of tingling in her head for about 3 minutes and then will lose awareness. She will

> stare with unresponsiveness for 5-15 minutes with automatisms. She will then have post event confusion for about 5 minutes. These occur 3-4 times/week and the last one occurred yesterday.
>
> Tonic clonic v. Nonepileptic seizure: She will get twitching of the face, arms and legs and will not lose awareness. She will also smell a burning plastic odor. This lasts 4 minutes and then will lose consciousness with shaking of the head, arms and legs with eyes closed with tongue biting at the tip and loss of bladder and bowel. This lasts anywhere from 5-10 minutes. She will then have post event confusion for about 10 minutes. These occur 3-4 times/week with the last one 5/8/17.

(Id. at 1218).

It is entirely unclear whether the ALJ considered this corroborative medical evidence and, if so, why he rejected it. It may well be that the ALJ believed that other medical evidence undermined these records and Falardo-Weller's claims as to the severity and frequency of her migraine and seizure episodes. But the ALJ did not say so, and, as we have explained *supra*, the few reasons that he did offer for rejecting Falardo-Weller's subjective complaints are refuted by the record evidence.

We are thus left with a scenario in which the "disparity between the actual record and the ALJ's spare synopsis of it makes it impossible for us to review the ALJ's decision," Fargnoli v. Massanari, 247 F.3d 34, 42 (3d Cir. 2001), since we "cannot tell if significant probative evidence was not credited or simply ignored," id. (quoting Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 121 (3d Cir. 2001)). As a result, and particularly given the material factual errors underlying what little analysis the ALJ did provide, we cannot find that the ALJ's decision is supported by substantial evidence. See 42 U.S.C. § 405(g).

**IV.     Conclusion**

We will grant Falardo-Weller's appeal (Doc. 1) from the ALJ's decision denying her application for disability insurance benefits and will remand this matter to the Commissioner.  An appropriate order shall issue.

>                                    /S/ CHRISTOPHER C. CONNER
>                                    Christopher C. Conner, Chief Judge
>                                    United States District Court
>                                    Middle District of Pennsylvania

Dated:     May 19, 2020